IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| BARRY WHITE, § | |
| Fed. Reg. No. 30769-112, § | |
| Petitioner, § | |
| § | |
| v. § | EP-10-CV-145-KC |
| § | |
| TRAVIS M. BRAGG, Warden, § | |
| Respondent. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner Barry White's *pro se* petition for habeas corpus under 28 U.S.C. § 2241 [Docket No. 1]. Therein, White, a federal prisoner,[1] alleges the Bureau of Prisons falsified his records to deny him an early release from confinement, refused to transfer him to a residential reentry center, violated the Americans with Disabilities Act, and wrongfully determined his eligibility for work. White seeks release from custody[2] and $1,110,000 in damages.[3] For the reasons discussed below, the Court will dismiss White's petition.

## BACKGROUND

On November 9, 2004, a federal grand jury sitting in the Central District of California returned a six-count superseding indictment charging White with distributing marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) ("count one"); possessing marijuana with the

---

[1]  White's petition indicates the Bureau of Prisons held him at the Federal Correctional Institution - La Tuna in Anthony, Texas, at the time he signed it. The Bureau of Prisons web site shows White is now assigned to the Community Corrections Office, 1299 Seaside Avenue, San Pedro, California 90731. *See* http://www.bop.gov /iloc2/InmateFinder Servlet?Transaction=IDSearch&needingMoreList=false &IDType=IRN&IDNumber = 30769-112 &x=60&y=15 (last visited April 19, 2010).

[2]  Mot for Release 1 [Docket No. 4].

[3]  Pet. 5 of 6 [Docket No. 1].

intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) ("count two"); knowingly carrying a firearm during and in relation to one or more drug trafficking crimes, in violation of 18 U.S.C. § 924(c) ("count three"); being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1) ("count four"); possessing marijuana with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) ("count five"); and being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1) ("count six"). After hearing the evidence and arguments of counsel, a jury convicted White on counts one, two, three, four, and six, and acquitted him on count five. The trial court sentenced White to eighty-four months' imprisonment, three-years' supervised release, and a $500 special assessment.[4]

On appeal, White argued that he did not "carry" a firearm, as that term is used in 18 U.S.C. § 924(c), because there was no evidence that he "physically transported" the weapon. The Ninth Circuit Court of Appeals noted, however, that the Government had "proffered undisputed evidence that White had a loaded .38 caliber handgun in his back pocket" during the drug trafficking offenses.[5] Accordingly, it rejected White's argument as foreclosed by *Muscarello*,[6] which held that "[n]o one doubts that one who bears arms on his person 'carries a weapon'" for the purposes of § 924(c),[7] and affirmed the conviction.

White next filed a motion to vacate, set aside or correct his sentence under 28 U.S.C. §

---

[4] *United States v. White*, CR 04-1325(A)-JFW (C.D. Cal. Apr. 22, 2005).

[5] *United States v. White*, No. 05-50284, 184 Fed. App'x 612, 613 (9th Cir. Jun. 8, 2006).

[6] *Muscarello v. United States*, 524 U.S. 125 (1998).

[7] *Id.* at 130.

2255,[8] which the sentencing court dismissed with prejudice.[9] When White filed a notice of appeal, both the sentencing court and the Ninth Circuit denied him a certificate of appealability.[10]

In his first § 2241 petition, White raised two grounds for relief.[11] First, he claimed that he had not engaged in interstate commerce to obtain the firearm and, therefore, had not violated 18 U.S.C. § 924(c). Second, he asserted the district court lacked personal jurisdiction over him because law enforcement authorities arrested him on public, not federal property. The sentencing court denied the petition.[12]

White then filed a second § 2255 motion, which the sentencing court summarily dismissed.[13] White responded with a motion to set aside the judgment in his first motion to vacate. He argued that under the precedent established in *Heller*,[14] "[u]nless there is proof of actual use and not mere possession[] in the course of another crime the [r]ight under the Second Amendment trumps the criminal charge."[15] The trial court rejected White's argument and denied

---

[8]  Mot. to Vacate [Docket No. 141, Cause No. 2:04-CR-1325-JFW (C.D. Cal. filed Aug. 16, 2006)].

[9]  Order Denying Mot. to Vacate [Docket No. 142, Cause No. 2:04-CR-1325-JFW (C.D. Cal. entered Sep. 5, 2006)].

[10]  Order Re: Certificate of Appealability [Docket No. 146, Cause No. 2:04-CR-1325-JFW (C.D. Cal. entered Nov. 8, 2006)]; *United States v. White*, No. 06-56594 (9th Cir. Aug. 7, 2007).

[11]  Pet. for Writ of Habeas Corpus [Docket No. 152, Cause No. 2:04-CR-1325-JFW (C.D. Cal. filed Feb. 15, 2007)].

[12]  Order denying Pet. for Writ of Habeas Corpus [Docket No. 153, Cause No. 2:04-CR-1325-JFW (C.D. Cal. entered Mar. 8, 2007)].

[13]  Order Denying Mot to Vacate [Docket No. 156, Cause No. 2:04-CR-1325-JFW (C.D. Cal. entered Aug 21, 2008)].

[14]  *District of Columbia v. Heller*, __ U.S. __, 128 S. Ct. 2783 (2008).

[15]  Pet'r's Mot. to Set Aside Void J. 1 [Docket No. 159, Cause No. 2:04-CR-1325-JFW (C.D. Cal. filed Sep. 24, 2008)].

his motion.[16]  White filed a notice of appeal, but the trial court denied him a certificate of appealability after determining "[t]here has been no substantial showing of the denial of a constitutional right."[17]

In his second § 2241 petition, White contested his classification by the Bureau and the validity of his conviction under 18 U.S.C. § 922(g)(1).[18]  With respect to his classification, White asserted the Bureau had improperly characterized his firearms convictions as crimes of violence.  As a result, according to White, the Bureau had given him a greater than necessary security management variable.  Additionally, although he had successfully completed a drug treatment program, the Bureau had denied him a sentence reduction and a transfer to a minimum security prison camp.  White claimed, "[t]his classification system is automatic . . . so there is no effective administrative remedy process to correct it."[19]  With regard to the validity of his conviction, White asserted that under *Heller*, the right to keep and bear arms was a fundamental right.  Thus, he argued, he was actually innocent of the felon in possession of a firearm conviction under § 922(g)(1).  The reviewing court dismissed White's petition after determining that he had failed to exhaust his administrative remedies.[20]

---

[16] Order Denying Pet'r's Mot. to Set Aside Void J. 1 [Docket No. 158, Cause No. 2:04-CR-1325-JFW (C.D. Cal. entered Sep. 25, 2008)].

[17] Order Re: Certificate of Appealability [Docket No. 161, Cause No. 2:04-CR-1325-JFW (C.D. Cal. entered Oct. 20, 2008)].

[18] *See* 18 U.S.C.A. 924(g)(1) (West 2010) ("It shall be unlawful for any person . . . who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition.").

[19] Pet. for Writ of Habeas Corpus 5 [Docket No. 1, EP-08-CV-328-DB (W.D. Tex. filed Aug. 20, 2008)].

[20] *White v. Bragg*, EP-08-CV-328-DB (W.D. Tex. Mar. 30, 2009).

Mindful of White's *pro se* status, the Court has liberally read his instant § 2241 petition which raises four grounds for relief.[21] First, White asserts that, after he successfully completed a drug treatment program, the Bureau retaliated against him by falsifying his records and characterizing his firearms convictions as crimes of violence in order to deny him a transfer to another facility and early release from prison under the Violent Crime Control and Law Enforcement Act of 1994.[22] He adds the Bureau's "[r]efusal . . . to relocate [him] to [the] Ninth

---

[21] *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding *pro se* pleadings to less stringent standards than formal pleadings drafted by lawyers); *see also Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) (explaining liberal construction allows active interpretation of a *pro se* pleading to encompass any allegation which may raise a claim for federal relief).

[22] The Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796 (Sep. 13, 1994), amended 18 U.S.C. § 3621 to require the Bureau to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(e)(1). An "eligible prisoner" is one who is "determined by the Bureau to have a substance abuse problem," and who is "willing to participate in a residential substance abuse treatment program." *Id*. at § 3621(e) (5)(B)(i) and (ii). As an incentive for the successful completion of the residential treatment program, the Bureau may, in its discretion, reduce an inmate's sentence by up to one year if he was "convicted of a nonviolent offense." *Id*. at § 3621(e)(2)(B). The Bureau has promulgated regulations at 28 C.F.R. §§ 550.50 - 550.57 to implement the statutory requirements. Participation in the program is voluntary and decisions on placement are made by the drug abuse treatment coordinator. 28 C.F.R. § 550.56. "Inmates may be removed from the program by the Drug Abuse Program Coordinator because of disruptive behavior related to the program or unsatisfactory progress in treatment." *Id*. at § 550.56(g). "Inmates may seek formal review of complaints regarding the operation of the drug abuse treatment program by using administrative remedy procedures in 28 CFR part 542." *Id*. at § 550.57. *See also Lopez v. Davis*, 531 U.S. 230, 244 (2001) ("Having decided that the Bureau may categorically exclude prisoners based on their preconviction conduct, we further hold that the regulation excluding Lopez is permissible. The Bureau reasonably concluded that an inmates's prior involvement with firearms, in connection with the commission of a felony, suggests his readiness to resort to life-endangering violence and therefore appropriately determines the early release decision."); *Handley v. Chapman*, 587 F.3d 273, 276-77 (5th Cir. 2009) ("We [conclude] that public safety was the contemporaneous rationale for the [Bureau's] policy. We held valid a prior version of the regulation in *Venegas v. Henman*, 126 F.3d 760, 765 (5th Cir. 1997), and the [Bureau] complied with the [Administrative Procedures Act]'s procedural requirements when it changed course from that prior regulation. Alternatively, we conclude that the [Bureau's]

Circuit result[ed] in the loss of one (1) year [of] liberty, by fraud and deception, falsification of records and misrepresentation of legal precedent."[23] Second, White claims the Bureau wrongfully refused to transfer him to a residential reentry center or home confinement one year before his scheduled release date under the Second Chance Act of 2007.[24] He contends the Bureau "conducted no meaningful test to permit Halfway House placement at one year."[25] Third,

---

newest version of the regulation, codified at 28 C.F.R. § 550.55, applies to Handley, because its application would not have an impermissible retroactive effect. Handley's arbitrary-and-capricious challenge fails as to this newest rule, because [the Bureau's] comment to § 550.55 includes a detailed rationale for its policy choice.").

[23]   Pet. 4 of 6 [Docket No. 1].

[24]   The Second Chance Act of 2007, Pub. L. No. 110-199 § 251(a), 122 Stat. 657 (Apr. 9, 2008), directs "a shift from policing those on parole to rehabilitating them" and places on the "parole system . . . an increasing special obligation to help federal offenders successfully reenter into society." *United States v. Wessels*, 539 F.3d 913, 915 (8th Cir. 2008) (Bright, J., concurring). The Act includes funding for such services as appropriate drug treatment, job training and placement, educational services, and other services or support needed for reentry, and is intended to rehabilitate prisoners and reduce recidivism. *Id*. The Act also addresses home confinement and placement in residential reentry centers (halfway houses). *See* 18 U.S.C.A. § 3624(c) (West 2010). Relevant to the instant Petition, the Act modifies 18 U.S.C. § 3624(c) to permit the Bureau of Prisons to place a prisoner in a community corrections facility for up to twelve months, instead of limiting that time to six months. The Act also directs the Bureau to issue new regulations to ensure that placements in community correctional facilities are "(A) conducted in a manner consistent with section 3621(b) of this title; (B) determined on an individual basis; and (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community." *See* 28 U.S.C.A. § 3624(c)(6). The Bureau adopted new regulations, codified at 28 C.F.R. §§ 570.20-.22, effective October 21, 2008. Both the statute and the regulations instruct the Bureau to make a determination on the amount of time a prisoner should spend in residential reentry center "on an individual basis." *See* 28 U.S.C.A. § 3624(c)(6); 28 C.F.R. § 570.22. The Bureau also adjusted Policy Statement 7310.04 to provide that residential reentry center needs "can usually be accommodated by a placement of six months or less, and that placement in [a residential reentry center] for more than six months must be approved in writing by a regional director of the [Bureau]." *See Miller v. Whitehead*, 527 F.3d 752, 757 n.4 (8th Cir.2008).

[25]   Pet. 4 of 6 [Docket No. 1].

White suggests he has a disability and declares, without further explanation, that the Bureau has violated the Americans with Disabilities Act.  Fourth, White claims the Bureau wrongfully changed his status from "medically unassigned" to "work" due to his "relentless pursuit" of a transfer.[26]  In addition to his immediate release from prison, White seeks $1,000,000 in damages for false imprisonment, $100,000 in damages for Privacy Act violations, and $10,000 in damages for Americans With Disabilities Act and other civil rights violations.[27]  White maintains he has "attempted multiple [Prison Litigation Reform Act] remedies related to my attempts to receive the 1 year sentence reduction under 18 U.S.C. 3621(e) for participation in the Residential Drug and Alcohol Treatment Program."[28]  He adds "[t]he time for [my] release is one month from now."[29]

## ANALYSIS

The Court has given White's petition preliminary consideration pursuant to 28 U.S.C. § 2243[30] and Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts,[31] which is applicable to § 2241 petitions under Rule 1(b).[32]  According to Rule 4, a district court

---

[26]   *Id*.

[27]   *Id*.; Mem. in Supp. 7 of 7 [Docket No. 2].

[28]   Decl. of Barry White 2 of 4 [Docket No. 3].

[29]   Pet. 5 of 6 [Docket No. 1].

[30]   28 U.S.C. § 2243 (West 2010) ("A court . . . entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.").

[31]   U.S.C.S. § 2254 PROC. R. 4 (West 2010).

[32]   *See id.* at PROC. R. 1(b) ("The district court may apply any or all of these rules to a habeas petition not covered by Rule 1(a).").

may dismiss an application for habeas corpus relief "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief."[33]

An initial issue which the Court must address in reviewing a § 2241 petition is whether the petitioner has exhausted his administrative remedies. This is because a federal prisoner must typically exhaust his administrative remedies before seeking habeas relief.[34] Exhaustion under § 2241 requires the petitioner to "fairly present all of his claims" through appropriate channels prior to pursuing federal habeas relief.[35] Exhaustion "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency."[36] In this regard, "[w]hen an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted, or at least piecemeal appeals may be avoided."[37] Additionally, "exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration."[38] These concerns apply with particular force "when the action under review involves exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise."[39]

---

[33] *Id.* at PROC. R. 4.

[34] *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam) (addressing exhaustion in context of a § 2241 challenge by a federal prisoner to a parole decision).

[35] *Dickerson v. Louisiana*, 816 F.2d 220, 228 (5th Cir. 1987) (addressing a § 2241 petition filed by a state pre-trial detainee).

[36] *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992).

[37] *Id.* (citing *Parisi v. Davidson*, 405 U.S. 34, 37 (1972); *McKart v. United States*, 395 U.S. 185, 194 (1969)).

[38] *Id.* (citing *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975)).

[39] *Id.* (citing *McKart*, 395 U.S. at 195).

Exhaustion requirements "may be subject to certain defenses such as waiver, estoppel or equitable tolling."[40]  Furthermore, when "the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action," the petitioner need not exhaust his administrative remedies.[41]  Such exceptions to the exhaustion requirement, however, "apply only in 'extraordinary circumstances,' and [the petitioner] bears the burden of demonstrating the futility of administrative review."[42]  If a federal inmate carries his burden to demonstrate an applicable exception to the exhaustion requirement, he may obtain a merits ruling on his § 2241 petition despite a lack of exhaustion.[43]

The Bureau has established a multi-tiered administrative remedy program whereby inmates can "seek formal review of an issue relating to any aspect of [their] own confinement."[44]  First, the inmate must present his particular complaint to the prison staff and attempt to resolve the issue in an informal manner.[45]  If the complaint cannot be resolved informally, the inmate must file a formal written administrative remedy request on a BP-9 form with the prison warden.[46]  The warden has twenty days to respond, which may be extended by an additional

---

[40] *Wright v. Hollingsworth*, 260 F.3d 357, 358 n.2 (5th Cir. 2001).

[41] *Fuller*, 11 F.3d at 62.

[42] *Id*.

[43] *Id*.

[44] 28 C.F.R. § 542.10(a).

[45] *Id*. at § 542.13(a).

[46] *Id*. at § 542.14.

twenty days.[47]  Any adverse decision by the warden must be appealed to the appropriate regional director by filing a BP-10 form.[48]  The regional director has thirty days to issue a response, which may be extended by an additional thirty days.  The final step in the administrative review process is an appeal to the Office of General Counsel on a BP-11 form.[49]  The General Counsel has forty days to issue a response.[50]  If an inmate does not receive a response within the time allotted for a reply, he may consider the absence of a response a denial at that level and proceed to the next level.[51]  An inmate may seek relief in federal court only after he has exhausted all levels of the administrative review process.[52]

White has neither alleged nor shown that he exhausted his available administrative remedies through the Bureau's program.  White has simply claimed that he has "attempted multiple . . . remedies."[53]  Further, he has suggested, but not demonstrated, the futility of an administrative review.[54]  He merely argues that he "no longer ha[s] to abide [by the procedures]

---

[47]    *Id*. at § 542.18.

[48]    *Id*. at § 542.15(a).

[49]    *Id*.

[50]    *Id.* at § 542.18.

[51]    *Id*.

[52]    *See Lundy v. Osborn*, 555 F.2d 534, 535 (5th Cir. 1977) ("Only after such remedies are exhausted will the court entertain the application for relief in an appropriate case.").

[53]    Decl. of Barry White 2 of 4 [Docket No. 3].

[54]    *See Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (holding that "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.").

because of abusive tactics, false information–as well as the shortness of time."[55]  Confronted with the argument "that to require exhaustion of state remedies . . . would deprive a . . . prisoner of the speedy review of his grievance which is so often essential to any effective redress," the Supreme Court acknowledged that "exhaustion of . . . remedies takes time" but concluded that "there is no reason to assume that . . . prison administrators . . . will not act expeditiously."[56]  In short, White has neither exhausted his administrative remedies nor shown the extraordinary circumstances necessary to exempt him from the exhaustion requirement.

Moreover, even if White had exhausted his administrative remedies, his claims for damages are not cognizable in a § 2241 petition.  "Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus . . . and a complaint under the Civil Rights Act of 1871, . . . 42 U.S.C. § 1983."[57]  When an inmate challenges "the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."[58]  When an inmate attacks "unconstitutional conditions of confinement and prison procedures," however, his proper remedy is a civil rights complaint

---

[55]   Pet. 5 of 6 [Docket No. 1].

[56]   *Preiser v. Rodriguez*, 411 U.S. 475, 494-95 (1973).

[57]   *Muhammad v. Close*, 540 U.S. 749, 250 (2004).  *See also Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (recognizing a right implied directly under the Constitution to recover damages against a federal official for a violation of a constitutional right); *Evans v. Ball*, 168 F.3d 856, 863 n.10 (5th Cir. 1999) ("A *Bivens* action is analogous to an action under § 1983 – the only difference being that § 1983 applies to constitutional violations by state, rather than federal officials.").  For ease of reference, the Court will discuss the applicable law only in terms of § 1983.

[58]   *Preiser*, 411 U.S. at 500.

under § 1983.[59]

The distinction between a petition for habeas corpus and a civil rights action sometimes becomes blurred when an inmate challenges unconstitutional conditions of confinement that may affect the timing of his release from prison.[60]  This is especially true in broad-based attacks where the "resolution of the factual allegations and legal issues necessary to decide the § 1983 claim may, in effect, automatically entitle [the inmate] to immediate or earlier release."[61]  Thus, the Fifth Circuit has adopted a bright-line rule that an inmate must pursue claims which would result in his immediate or accelerated release in a petition for writ of habeas corpus, while he must pursue claims which would not automatically entitle him to an immediate or earlier release as a civil rights complaint.[62]

While White seeks immediate release from prison, he also asks for monetary damages for alleged unconstitutional or illegal prison procedures which he claims violate the Violent Crime Control and Law Enforcement Act, the Second Chance Act, the Americans with Disabilities Act, and other civil rights laws.[63]  Favorable determinations of these claims would not automatically entitle him to an accelerated release.[64]  Thus, the Court finds that White should pursue these

---

[59]   *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997).

[60]   *Id*.

[61]   *Serio v. Members of La. State Bd. of Pardons*, 821 F.2d 1112, 1119 (5th Cir. 1987).

[62]   *Carson*, 112 F.3d at 821; *Cook v. Texas Dep't of Criminal Justice Transitional Planning Dep't*, 37 F.3d 166, 168 (5th Cir. 1994).

[63]   Pet. 5 of 6 [Docket No. 1].

[64]   *See Pierre v. United States*, 525 F.2d 933, 935 (5th Cir.1976) ("Simply stated, habeas is not available to review questions unrelated to the cause of detention.")

claims in a civil rights action.[65]

## CONCLUSION

After carefully reviewing the available record, the Court concludes it should dismiss White's petition in accordance with 28 U.S.C. § 2243 because he has failed to exhaust his administrative remedies. Accordingly, the Court enters the following orders:

1. The Court **DISMISSES WITHOUT PREJUDICE** Petitioner Barry Francis White's *pro se* petition for habeas corpus under 28 U.S.C. § 2241 [Docket No. 1] because it appears from the face of his petition that he is not entitled to habeas corpus relief.

2. The Court **ORDERS** the District Clerk to provide Petitioner Barry Francis White with the form appropriate form for filing a civil rights complaint pursuant to 42 U.S.C. § 1983 along with an application to proceed *in forma pauperis*.

3. The Court additionally **DENIES** all pending motions in this cause, if any, as **MOOT**.

**SO ORDERED.**

**SIGNED** on this 23rd **day of April 2010.**

_____
**KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE**

---

[65] *Carson*, 112 F.3d at 820-21.